# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
### CENTRAL DIVISION
### LEXINGTON

**HAZARD COAL CORPORATION,**

    Appellant,

v.

**CAMBRIAN COAL LLC, ET AL.,**

    Appellees.

CIVIL NO. 5:21-40-KKC

## OPINION AND ORDER

\*\* \*\* \*\* \*\* \*\*

"Ignoring deadlines is the surest way to lose a case." *Haney v. Educ. Credit Mgmt. Corp.*, No. 12-08-ART, 2012 U.S. Dist. LEXIS 122084, at \*1 (E.D. Ky. Aug. 27, 2012) (citation omitted). And in a bankruptcy proceeding, where the need for certainty and finality is especially acute, ignoring deadlines and sitting on one's rights until after the bankruptcy sale is finalized, as Appellant Hazard Coal Corporation did in this case, is a surefire way to forfeit those rights.

Hazard Coal appeals the January 22, 2021 Order of the Bankruptcy Court, which was issued to explain and clarify the court's rulings in prior orders (the Declarations Order). However, most of Hazard Coal's arguments on appeal have little to do with the Declarations Order itself. Hazard Coal's real grievance is that it failed to raise timely objections and assert its claims, and now seeks to sidestep those failures by collaterally attacking the Bankruptcy Court's prior orders. Hazard Coal's arguments on appeal focus on perceived errors it alleges to have occurred throughout the bankruptcy proceeding, rather than any error of the Declaration Order itself. Hazard Coal thus misapprehends and vastly overstates the scope of this appeal, because the only issues before this Court are those that arise from the order that was appealed—the Declarations Order. And because in that order the Bankruptcy Court simply interpreted its own prior orders, the only issue properly before this Court on appeal is whether the Bankruptcy Court's interpretation was erroneous.

For the reasons stated below, the Court affirms the Bankruptcy Court's interpretation of its own prior acts and orders that it set forth in the Declarations Order.

## BACKGROUND

This appeal arises from a jointly administered bankruptcy proceeding that involved nineteen related coal industry companies that filed for chapter 11 bankruptcy on June 16, 2019. *In re Cambrian Holding Company, Inc.*, No. 19-51200-GRS (Bankr. E.D. Ky. June 16, 2019), ECF No. 1 (hereinafter *Bankruptcy Proceeding*). Two of those companies are relevant here: Appellees Perry County Coal, LLC and its parent company, Cambrian Holding Company, Inc.

## I.     The Bankruptcy Proceeding

At some point prior to the initiation of the bankruptcy proceeding, Perry County Coal acquired a lease that allowed it to mine and transport coal on Appellant Hazard Coal Company's property in Perry County, Kentucky in exchange for certain fees (the Lease). After a dispute arose regarding the amount of fees owed, Hazard Coal purported to terminate the Lease four days before Perry County Coal filed for bankruptcy.

Despite Hazard Coal's purported termination of the Lease, Perry County Coal listed Hazard Coal as one of its creditors and included the Lease on its list of contracts and unexpired leases to be included in the bankruptcy estate, describing the lease as "current." *In re Perry County Coal LLC*, No. 19-51217-GRS (Bankr. E.D. Ky. June 16, 2019), ECF No. 22, at 139. As an interested party, Hazard Coal was given notice of that fact and multiple opportunities to object. *See Bankruptcy Proceeding,* ECF Nos. 339, 341, 381. Specifically, the Bankruptcy Court notified interested parties, including Hazard Coal, of the deadlines for various objections:

1. September 9, 2019 at 4:00 p.m. – the deadline for Hazard to file objections to the proposed cure amount with respect to the Coal Lease;

2. September 16, 2019 at 2:00 p.m. – the deadline for Hazard to file objections to the assumption or assignment of the Coal Lease;

3. September 20, 2019 at 4:00 p.m. – the deadline for Hazard to file objections to the sale of substantially all the Debtors' assets.

*Bankruptcy Proceeding,* ECF No. 339. Hazard Coal was also notified of the time and place that assets including the Lease would be auctioned. *Bankruptcy Proceeding,* ECF No. 502. But Hazard Coal did not file any objections by these deadlines and did not attend the auction.

After the bankruptcy estate's assets had been successfully auctioned to various buyers, the Debtors asked the Bankruptcy Court to authorize the sale of those assets on the terms that the Debtors had negotiated with the purchasers. *Bankruptcy Proceeding,* ECF No. 517. On September 24, 2019, the Bankruptcy Court held a hearing on the proposed sale of assets, giving interested parties yet another opportunity to object. *Bankruptcy Proceeding,* ECF No. 524. Hazard Coal did not attend the hearing. Instead, it waited until after the hearing had begun to file a single sentence objection stating that "Hazard Coal's lease with Debtor is in breach and no longer in effect." *Bankruptcy Proceeding,* ECF No. 521.

The next day, notwithstanding Hazard Coal's eleventh hour and barebones objection, the Bankruptcy Court entered an order approving the proposed sale of the Debtors' assets, including assumption and assignment of the Lease to American Resources Corporation (ARC). *Bankruptcy Proceeding,* ECF No. 534 (the Sale Order). Hazard Coal did not seek a stay of the Sale Order.

## II.     Hazard Coal's Collateral Attacks

After failing to properly object to the assignment of the Lease to ARC, failing to seek a stay of the Sale Order, and failing to in any way participate in the bankruptcy proceeding, Hazard Coal resorted to collaterally attacking assignment of the Lease to ARC. Two of those collateral attacks are relevant here: Hazard Coal's motion for reconsideration of the Sale Order and an action filed in Perry Circuit Court that was removed to this Court (the Federal Action).

### A.     Hazard Coal's Motion for Reconsideration and the Bankruptcy Court's Reconsideration Order

On October 9, 2019, Hazard Coal filed a motion asking the Bankruptcy Court to reconsider the Sale Order under Federal Rule of Civil Procedure 59(e) and 60.[1] *Bankruptcy*

---

[1] Rules 59(e) and 60 are made applicable to the bankruptcy proceeding pursuant to Federal Rules of Bankruptcy Procedure 9023 and 9024.

*Proceeding,* ECF No. 595. In its motion, Hazard Coal argued that the Lease had been terminated prior to the initiation of the bankruptcy proceedings, and thus was not part of the bankruptcy state and could not be assigned to ARC in the first instance. The Debtors objected to the motion for reconsideration, and Hazard filed an initial response to their objection on November 20, 2019, followed by a more complete supplemental response on December 10, 2019.

In that supplemental response, Hazard Coal for the first time argued that ARC had not been qualified to bid on the set of assets that included the Lease. *Bankruptcy Proceeding,* ECF No. 810. Under the bidding procedures established by the Bankruptcy Court, a qualified bidder had to demonstrate that it was not "permit blocked" and "will not be 'permit blocked' as of the time of transfer or issuance" of assets. [2] *Bankruptcy Proceeding,* ECF No. 339, at 20. But ARC was permit blocked at the time, and on the purchase agreement that the Debtors submitted for the Bankruptcy Court's approval, ARC had incorrectly stated that it was not permit blocked (the First Assignment). *Bankruptcy Proceeding,* ECF No. 514, 514-1, 534.

After the First Assignment had been authorized by the Sale Order, the purchase agreement was revised to no longer state that ARC was not permit blocked (the Revised Assignment). *Bankruptcy Proceeding,* ECF No. 856, 856-1. The transfer of the Lease to ARC was executed using the Revised Assignment, which Hazard Coal argues is invalid because the revision is material, and the Revised Assignment was not authorized by the Sale Order. Hazard Coal thus argued that the Bankruptcy Court must vacate the Sale Order to the extent that it authorized transfer of assets to ARC, including assignment of the Lease, because ARC was not qualified to bid under the terms of the bidding procedures. *Bankruptcy Proceeding,* ECF No. 810, at 12 ¶ 38.

On January 3, 2020, the Bankruptcy Court entered an order rejecting Hazard Coal's argument and denying its motion to reconsider the Sale Order. *Bankruptcy Proceeding,* ECF No. 940 (the Reconsideration Order). The Reconsideration Order held that notwithstanding

---

[2] Coal mining activity cannot legally take place without certain permits. Under the Surface Mining Control and Reclamation Act of 1977, entities with unabated and outstanding violations cannot acquire mining permits and are listed on the Applicant Violator System (AVS). An entity that appears on the AVS is referred to as being "permit blocked."

Hazard Coal's purported pre-petition termination of the Lease, Perry County Coal had retained a disputed interest that became property of the bankruptcy estate. *Id.* at 8–10. Thus, because Hazard Coal had failed to object to the Sale Order despite having notice and opportunity to do so, the Bankruptcy Court held arguments that the Lease had been terminated pre-petition were precluded by *res judicata. Id.* at 10–12. The Reconsideration Order further held that even if that argument was not precluded by *res judicata*, Hazard Coal had failed to satisfy the substantive requirements for reconsideration of a ruling. *Id.* at 12–16.

In addressing the argument that ARC was not a qualified bidder, the Reconsideration Order held that the newly discovered evidence of ARC's permit blocked status was not sufficient to warrant reconsideration of the Sale Order. *Id.* at 15–16. The court explained that Hazard Coal was required to show that it was excusably ignorant of this newly discovered evidence, but that it had failed to do so both because the information regarding ARC's permit blocked status was both publicly available and Hazard Coal had failed to take any substantive action in the bankruptcy proceeding until after the sale was complete. *Id.* The Reconsideration Order thus concluded that "Hazard Coal may not collaterally attack the Sale Order with an argument that the Lease was not property of the estate." *Id.* at 16.

## B.   Hazard Coal's Files Suit to Challenge Transfer of the Lease to ARC (the Federal Action)

About two weeks later, on January 16, 2020, Hazard Coal filed an action against ARC and Perry County Resources in Perry Circuit Court, which was subsequently removed to this Court. *Hazard Coal Corporation v. American Resources Corporation and Perry County Resources LLC*, Civil Action No. 6:20-CV-010-CHB-HAI (E.D. Ky. Jan. 17, 2020), ECF No. 1 (hereinafter *Federal Action*). In that action, Hazard Coal seeks, *inter alia*, a declaration that the Lease was terminated pre-petition and thus was not validly assigned to ARC.

On October 14, 2020, Hazard filed a motion for summary judgment in the Federal Action, arguing that the Bankruptcy Court did not approve the assignment of the Lease and there is no writing to satisfy the statute of frauds, and any assignment of the Lease to Defendants was the result of fraud upon the Bankruptcy Court—in other words, arguing that

the revision of the First Assignment and Revised Assignment invalidated transfer of the Lease to ARC. *Federal Action*, ECF No. 44-1, at 18–20. Hazard also argued that even if the Lease was properly assigned to ARC, the Lease terminated by its own terms when ARC failed to pay the 2019 royalties when they became due in 2020. *Id.* at 15–18.

### 1. *ARC's Motion for Declaration of Rights and the Bankruptcy Court's Declarations Order*

While Hazard Coal's motions remained pending in the Federal Action, ARC returned to the Bankruptcy Court seeking clarification of its previous orders. ARC filed a Motion for Declaration [of] Rights Regarding the Assumption and Assignment of the Hazard Coal Company Lease. *Bankruptcy Proceeding*, ECF No. 1466. In that motion, ARC protested that, despite the Bankruptcy Court's prior orders, Hazard Coal continued to collaterally attack the Sale Order in the Federal Action. *Id.* at 2. ARC therefore asked the Bankruptcy Court to "enter an Order clearly setting forth and affirming its earlier findings that the [Lease] was properly assumed by the Debtors and properly assigned to ARC." *Id.* at 2–3.

After the matter had been briefed and oral arguments held, the Bankruptcy Court entered an order on January 22, 2021. *Bankruptcy Proceeding*, ECF No. 1499 (the Declarations Order). In the Declarations Order, the Bankruptcy Court noted that "[t]he relief requested is already in the record" but acknowledged that, based on the arguments of the parties, "an additional order is beneficial." *Id.* at 1. The Bankruptcy Court then explained:

> The [Reconsideration] Order (i) confirms the Debtor's assumption of the Lease and assignment to American Resources Corporation; (ii) recognizes that transfer was authorized by the [Sale] Order approving the sale and substantially all the Debtors' assets entered on September 25, 2019; and (iii) ruled that Hazard Coal could not collaterally attack the assumption and assignment by arguing the Lease was terminated prepetition.

*Id.* at 2–3. With respect to Hazard Coal's arguments "regarding the changes made to the form assignment attached to the Sale Order and the executed assignment," the Bankruptcy Court noted that it had already addressed the revision issue in the Reconsideration Order and "determined that the alteration did not affect the assumption and assignment of the Lease or the conclusion that Hazard Coal was estopped from disputing the transfer." *Id.* at 3. The Declarations Order concluded its explanation by stating that: "It is ordered that the record

stands. This order does not alter the earlier decisions; it is entered to assist the parties' understanding of prior orders." *Id.* at 3. Shortly after the Declarations Order was entered, on February 5, 2021, Hazard appealed the Declarations Order to this Court, seeking to have it "reversed, vacated, and held for not." (R. 3 at 18.)

### 2.      Hazard Coal Seeks Adjudication of ARC's Alleged Post-Transfer Breach of the Lease

Returning to the Federal Action, on June 14, 2021, Hazard Coal filed a motion asking the Court to adjudicate only the Lease termination issue that was set forth in its motion for summary judgment; that is, assuming transfer of the Lease to ARC was valid, whether ARC breached the Lease by failing to pay the annual minimum royalties for 2019, which became due in 2020. *Federal Action*, ECF No. 65, at 2–8. Hazard Coal argued that, if the Lease terminated in May 2020 due to ARC's failure to pay the 2019 royalties, then ARC has no legal right of entry on the property and cannot receive a permit. It therefore asked the Court to resolve that issue to prevent ARC from receiving a permit without a valid right of entry. Hazard Coal also requested that all remaining issues in the Federal Action be stayed pending resolution of this appeal, and ARC did not object. *Id.* at 8–9.

On September 30, 2021, the Court in the Federal Action issued an Opinion and Order holding that ARC did breach the Coal Lease by failing to pay the 2019 annual minimum royalties that became due in 2020 and that because of that breach, the lease had terminated. *Federal Action*, ECF No. 81. And as Hazard Coal requested, the Court stayed the implementation of the Order and all remaining matters in the case pending the resolution of this appeal. *Id.* at 37.

### 3.      The Parties Attempt to Mediate Their Dispute

On May 2, 2022, ARC asked that the Federal Action be referred to mediation. *Federal Action*, ECF No. 87. In the motion, ARC explained that it was no longer permit blocked and was eligible to accept transfer of the mining permits from the bankrupt debtors, but that permits could not be issued until the lease dispute between it and Hazard Coal was resolved. ARC believed that the parties could reach a resolution through mediation, which if successful, would likely have mooted this appeal and the remaining issues in the Federal Action.

In response to the mediation request, Hazard Coal expressed skepticism and relayed concerns that ARC may have caused damage to the property. Hazard Coal essentially argued that there was no valid lease, and therefore ARC had been using the property "without consideration and without any agreement . . . ." *Federal Action*, ECF No. 89, at 3. Thus, it argued that for mediation to be meaningful, it needed unfettered access to the property and up to date mine maps from ARC.

The Court referred the case to mediation before a magistrate judge and ordered ARC to provide Hazard Coal with updated coal mine maps. *Federal Action*, ECF No. 92. The magistrate judge held a settlement conference on June 21, 2022, but the parties were unable to reach an agreement. *Federal Action*, ECF No. 98.

### 4.    *Hazard Coal's Motion for a Hearing in This Appeal*

After mediation proved unsuccessful, on July 11, 2022, Hazard Coal filed a motion in this appeal asking for a status conference to address developments in the case since the appeal had been filed. (R. 25.) In the motion, Hazard Coal expressed concerns about ARC's use of the property, stating that the updated mine maps it had received during mediation show that "ARC continues to occupy, use and mine coal from Hazard Coal's property and appears to be inflicting irreparable damage to the mine works." (R. 25 at 4.) According to Hazard Coal, it is "unable to do anything about it because of the *sua sponte* stay of Hazard Coal's lease termination rights in the [Federal] Action pending resolution of this appeal." [3]

---

[3] Throughout its motion, Hazard Coal states that its lease termination rights were stayed "*sua sponte*." (R. 25 at 4; R. 25-1 at 12.) The Court finds this characterization of the stay misleading, as Hazard Coal expressly asked that all other matters in the Federal Action be stayed pending the outcome of this appeal. In its motion seeking adjudication of the lease termination issue with ARC, Hazard Coal expressly asked the Court to "hold all other issues in this case in abeyance . . . pending the outcome of [this appeal]." *Federal Action*, ECF No. 65, at 1–2. The Court honored that request, ordering that "all remaining matters in this case, including implementation of this Order, are STAYED pending resolution of Hazard Coal's appeal . . . ." *Federal Action*, ECF No. 81, at 37. The Court's order in the Federal Action was issued nearly a year ago. In that time, Hazard Coal has never objected to the stay, nor asked that it be modified to allow it to pursue its termination rights.

Hazard Coal's statement that the stay was issued "*sua sponte*" is highly misleading. Hazard Coal asked for a stay of all issues in the case other than adjudication of the lease termination issue, the Court adjudicated that issue and stayed all other matters in the case (including implementation of the order), and until now, Hazard Coal has never raised the stay as an issue. If the relief granted was not the relief that was requested, one would expect the party requesting relief to bring the issue to the Court's attention. But true to form, Hazard Coal failed to take any timely action. Instead, eleven months after the stay was issued, and only *after* it was allegedly suffering irreparable harm, Hazard Coal came to *this* Court—not the Court that entered the stay—with an urgent request for relief.

*Id.* Hazard Coal thus requested a hearing to address issues that may assist the Court in ruling on this appeal. Appellees did not file a response to Hazard Coal's motion.

## STANDARD OF REVIEW

The parties disagree on the standard of review applicable in this appeal because they disagree as to what the issues are on appeal. "The standard of review on appeal in a bankruptcy case is determined by the nature of the action taken below by the bankruptcy court." *E. Coast Miner LLC v. Nixon Peabody LLP (In re Licking River Mining, LLC)*, 911 F.3d 806, 810 (6th Cir. 2018) (cleaned up). When an order of the bankruptcy court is appealed, the district court "reviews the bankruptcy court's factual findings under the clearly erroneous standard, and its conclusions of law de novo." *Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648, 656 (6th Cir. 2002). But when the order being appealed does not make factual findings or legal conclusions, but merely explains the bankruptcy court's prior orders or acts, the bankruptcy court's interpretation of its own prior orders is reviewed under a clear abuse of discretion standard. *E. Coast Miner*, 911 F.3d at 810.

Hazard Coal appeals the Bankruptcy Court's Declarations Order, which was issued "to assist the parties' understanding of prior orders" and was not intended to "alter the earlier decisions" of the Bankruptcy Court. *Bankruptcy Proceeding*, ECF No. 1499, at 3. An examination of the Declarations Order shows that it explains the Reconsideration Order and the January 16, 2020 Hearing, and that it does not make any new findings of fact or conclusions of law. The Court will therefore review the Declarations Order's interpretation of the Bankruptcy Court's prior orders for clear abuse of discretion.[4]

"An abuse of discretion is defined as a definite and firm conviction that the [court below] committed a clear error of judgment." *In re Four Wells Ltd.*, No. 15-8020/8021/8022/8023, 2016 Bankr. LEXIS 1673, at *4 (B.A.P. 6th Cir. Apr. 12, 2016) (quoting

---

[4] If the Declarations Order did make new findings of fact or conclusions of law in addition to interpreting prior orders, those factual findings would be reviewed for clear error and legal conclusions reviewed de novo, notwithstanding the Bankruptcy Court's characterization. However, as explained in this opinion, the Declarations Order only interprets prior orders of the Bankruptcy Court and is thus reviewed for clear abuse of discretion.

*Mayor of Baltimore v. West Virginia (In re Eagle—Picher Indus., Inc.)*, 285 F.3d 522, 529 (6th Cir. 2002)). Under that standard, "[t]he question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Barlow v. M.J. Waterman & Assocs. (In re M.J. Waterman & Assocs.)*, 227 F.3d 604, 608 (6th Cir. 2000). Here, that means that unless the Court is definitely and firmly convinced that the Bankruptcy Court erred in its interpretation of its prior orders, such that no reasonable person could agree with that interpretation, the Declarations Order must be affirmed.

## ANALYSIS

Hazard Coal airs a cadre of grievances and asks the Court for sweeping, drastic relief. It alleges an array of perceived errors throughout the bankruptcy proceeding. Thus, at the outset it is important to be clear as to exactly what issues are and are not before this Court on appeal, as many of the issues raised by Hazard Coal are not.  Ultimately, Hazard Coal asks this Court to hold that (1) the Lease was terminated pre-petition and thus could not have been validly assumed and assigned in the bankruptcy proceedings, (2) assignment of the Lease to ARC is invalid because the transfer was not approved in conformity with the bankruptcy proceeding's procedures, (3) the Bankruptcy Court did not adjudicate the merits of whether the alteration in the First Assignment and Revised Assignment affected validity of the assignment to ARC, and that (4) Hazard Coal is not precluded, estopped, or prevented in any way from collaterally challenging transfer of the Lease to ARC.

The Court's appellate jurisdiction is limited to reviewing "only those bankruptcy court orders 'designated' in the Notice of Appeal." *Rozier v. Rescap Borrower Claims Tr. (In re Residential Capital, LLC)*, 2016 U.S. Dist. LEXIS 21204, at *22 (S.D.N.Y. Feb. 22, 2016). Here, Hazard Coal has appealed only the Bankruptcy Court's Declarations Order, which was issued with the express purpose of clarifying the Bankruptcy Court's prior rulings. (R. 1 at 2.) Thus, this Court is reviewing *only* whether the Bankruptcy Court's interpretation of its prior rulings, as set forth in the Declarations Order, was a clear abuse of its discretion—

whether its interpretation is a clear, definitive error in judgment that no reasonable person could agree with.

Hazard Coal did not appeal the Sale Order, the Reconsideration Order, or any other order of the Bankruptcy Court. Thus, the Court cannot review the findings of fact and conclusions of law made in those orders. *Kelley v. BMO Harris Bank N.A.*, No. 19-cv-1756 (WMW), 2022 U.S. Dist. LEXIS 97279, at *15 (D. Minn. June 1, 2022) ("A federal court lacks jurisdiction to review an appealable bankruptcy court order that is not timely appealed."). To the extent that those findings and conclusions might be erroneous, as Hazard Coal insists, the Court is without power to consider or correct those errors at this juncture. *Patel v. Hughes*, No. 3:21-00436, 2022 U.S. Dist. LEXIS 134200, at *11–12 (M.D. Tenn. July 28, 2022) ("Only the correctness of the decision on the appealed motion itself may be reviewed . . . Appellants may not pursue an indirect appeal from [prior orders] via their appeal of the [order actually appealed]."); *Livecchi v. Gordon*, 513 B.R. 209, 212 (W.D.N.Y. 2014) ("Although Debtor's brief raises a number of objections to prior actions of Trustee and rulings of the Bankruptcy Court during Debtor's bankruptcy proceedings, the only issue properly before the Court at this juncture is the propriety of the [order that was appealed]."); *Livecchi v. Gordon*, No. 11-CV-6178L, 2011 WL 6148627, 2011 U.S. Dist. LEXIS 141693, at *3 ("[T]he appeal is nonetheless limited in scope to review of the order appealed from . . . [Appellant] may not use this interlocutory appeal as a vehicle to challenge virtually everything that has occurred thus far in his bankruptcy case."). Any collateral challenge to the Sale Order or Reconsideration Order, as well as any request for relief that reaches beyond the effect of the Declarations Order, is not properly before this Court on appeal and will not be considered.

The scope of the Court's review of the Sale Order or Reconsideration Order is limited to whether the Declarations Order's interpretation of those prior orders is so clearly and definitively wrong that a reasonable person could not possibly agree with it.[5]

---

[5] If the Declarations Order were to interpret a prior order as making a factual finding or legal conclusion that the prior order clearly did not make, that interpretation would no doubt constitute a clear abuse of discretion and be reversed. But that did not happen here. Properly construed, the Declarations Order only clarifies the holding and interprets the effect of the Reconsideration Order.

## I.      Section 363(m) Does Not Moot This Appeal

ARC argues that the statutory mootness provision found in 11 U.S.C. § 363(m) renders this appeal moot. Section 363(m) provides that:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

The Sixth Circuit has explained the purpose of this provision as follows:

> Section 363(m) protects the reasonable expectations of good faith third-party purchasers by preventing the over-turning of a completed sale, absent a stay, and it safe-guards the finality of the bankruptcy sale. As a result, section 363(m) maximizes the purchase price of assets because without this assurance of finality, purchasers could demand a large discount for investing in a property that is laden with the risk of endless litigation as to who has rights to estate property.

*Made In Detroit, Inc. v. Official Comm. of Unsecured Creditors of Made in Detroit, Inc. (In re Made In Detroit, Inc.)*, 414 F.3d 576, 581 (6th Cir. 2005) (cleaned up).

According to ARC, three of Hazard Coal's arguments are barred by § 363(m). First, Hazard Coal's argument that the assignment was not approved in conformity with the Bankruptcy Court's procedural orders, and second, that the Bankruptcy Court never adjudicated on the merits the issue of whether the alteration between the First Assignment and Revised Assignment affected validity of the transfer of the Lease. (R. 18 at 19–25.) However, the Court need not determine whether these arguments are barred by § 363(m) because the arguments address issues that are not properly before this Court on appeal. The Declarations Order neither approved the assignment of the Lease to ARC nor adjudicated the validity of the transfer of the Lease to ARC. Those issues, and thus the question of whether they are barred by § 363(m), are beyond the scope of this appeal.

Third, ARC argues that § 363(m) bars Hazard Coal's argument that Hazard Coal can collaterally challenge the Sale Order's approval of the assignment of the Lease to ARC. Hazard Coal asks the Court "for an Order holding that [it] is not precluded from collaterally challenging the validity of the purported transfer of the Coal Lease in the Federal Court

Action or in any other forum." (R. 15 at 30.) To the extent that Hazard Coal attempts to collaterally challenge assignment of the Lease to ARC in this appeal, such a challenge is not properly before the Court. This appeal concerns only whether the Declarations Order properly interpreted the Bankruptcy Court's prior orders, not whether those prior orders were themselves erroneous.

Assuming that this argument is properly before the Court, it is not mooted by § 363(m). Section 363(m) preemptively moots an appeal that, if successful, would result in "reversal or modification" of an "authorization" (such as the Sale Order). Here, even if the Court were to grant Hazard Coal's requested relief and hold that it is not precluded from collaterally challenging validity of the assignment, that grant of relief would not reverse or modify the Sale Order—it would merely be a declaration that certain arguments are not barred by *res judicata*.[6] Such a declaration would not result in "over-turning of a completed sale" and would not itself reverse the finality of the Sale Order.  Section 363(m) is therefore inapplicable.

## II.    Res Judicata Does Not Bar This Appeal

The Appellees argue that Hazard Coal's appeal is barred by *res judicata* because it amounts to a collateral attack on the Sale Order and an attempt to sidestep the Reconsideration Order. (R. 18 at 25–29; R. 23 at 23–27.) The Trustee further argues that the *res judicata* effect of the Plan and Confirmation Order bars Hazard Coal's appeal. (R. 23 at 27–29.) According to the Appellees, *res judicata* principles preclude Hazard Coal from challenging the assignment of the Lease to ARC because the Bankruptcy Court approved the assignment as part of the Sale Order, and that approval is now final because the Bankruptcy Court denied reconsideration of the Sale Order and Hazard Coal failed to appeal either the Sale Order or Reconsideration Order. The Trustee also argues that the appeal is barred by the Plan and Confirmation Order because piecemeal modification of the Sale Order would

---

[6] If the Court were to declare that Hazard Coal can collaterally challenge the validity of the assignment of the Lease, and it then mounted a collateral challenge in another action, such an attack may well be barred by § 363(m). But that is not for this Court to decide, because the question of whether Hazard Coal is precluded from collaterally challenging the transfer of the Lease is not before the Court.

constitute an unwinding of the Plan, which has been substantially consummated by entry of the Confirmation Order.

To the extent that Hazard Coal attempts to challenge validity of the assignment of the Lease to ARC on appeal, this Court is without power to reach that issue. The Declarations Order did not approve the assignment and did not adjudicate the validity of the assignment. As previously explained, Hazard Coal's arguments that the Bankruptcy Court erred in its prior orders are not properly before this Court because those rulings were not appealed. The Court therefore expresses no opinion regarding the merits of those arguments or whether Hazard Coal is precluded from challenging prior orders of the Bankruptcy Court by *res judicata*.

Hazard Coal properly appealed the Declarations Order, which was issued to explain the Bankruptcy Court's prior rulings. *Res judicata* does not preclude Hazard Coal's argument that the Declarations Order erroneously interpreted those prior rulings, and therefore does not bar this appeal.

## III.    Hazard Coal's Objections to the Declarations Order

Hazard Coal argues that the Declarations Order erroneously interprets the Bankruptcy Court's Reconsideration Order. The Declarations Order explained that the Reconsideration Order did three things:

> The [Reconsideration] Order (i) confirms the Debtor's assumption of the Lease and assignment to [ARC]; (ii) recognizes that transfer was authorized by the [Sale] Order approving the sale of substantially all the Debtors' assets entered on September 25, 2019; and (iii) ruled that Hazard Coal could not collaterally attack the assumption and assignment by arguing the Lease was terminated prepetition.

*Bankruptcy Proceeding,* ECF No. 1499, at 2–3. The Declarations Order further states that the "[the Reconsideration Order] already determined that the alteration did not affect the assumption and assignment of the Lease or the conclusion that Hazard Coal was estopped from disputing the transfer." *Id.* at 3.

Hazard Coal argues that these statements are an erroneous interpretation of the Reconsideration Order and amount to a revision of the record below. It takes issue with two

– 14 –

aspects of the Declarations Order: (1) the conclusion that Hazard Coal is precluded from arguing that the Lease terminated pre-petition; and (2) the statement that the Reconsideration Order "already determined" that the use of the Revised Assignment, rather than the First Assignment, to execute the transfer of the Lease did not affect the assumption and assignment of the Lease to ARC. Hazard Coal argues that *res judicata* does not preclude it from arguing the Lease terminated pre-petition because the Reconsideration Order did not rule on the merits of that argument, and that the Reconsideration Order did not "determine" that the Revised Assignment did not affect the transfer to ARC because there was not ruling on the merits of that argument either.

### A.   The Reconsideration Order Held That Hazard Coal Is Precluded from Arguing the Coal Lease Terminated Pre-Petition

Hazard Coal first argues that the Declarations Order erroneously concluded that the Reconsideration Order ruled that *res judicata* precludes it from arguing that the Lease terminated pre-petition. To reiterate, the issue before this Court is *not* whether *res judicata* does, in fact, preclude that argument. Rather, the issue here is whether the Declarations Order's interpretation of the ruling in the Reconsideration Order amounts to a clear abuse of discretion.

The Declarations Order simply confirms the Reconsideration Order's clear and unambiguous holding that "Hazard Coal may not collaterally attack the Sale Order with an argument that the Lease was not property of the estate," *Bankruptcy Proceeding*, ECF No. 940, at 16, because "[r]es judicata bars Hazard Coal from disputing assignment of the Lease to [ARC]." *Id.* at 10. Accordingly, the Declarations Order's interpretation of that ruling is not a clear abuse of discretion.

### B.   The Declarations Order Does Not State That the Reconsideration Order Adjudicated Whether the Alteration of the Assignment Invalidates Transfer of the Lease to ARC

The Declarations Order simply confirms that the Reconsideration Order "already determined that the alteration did not affect . . . the conclusion that Hazard Coal was estopped from disputing the transfer." *Bankruptcy Proceeding*, ECF No. 1499, at 3. The Reconsideration Order stated that Hazard Coal's motion for reconsideration failed because it

was estopped from disputing the transfer by arguing that the Lease had terminated pre-petition. *Bankruptcy Proceeding*, ECF No. 940, at 10–12. The Reconsideration Order also reasoned that, even if Hazard Coal's pre-petition termination argument was not precluded, the motion for reconsideration would still fail because the alteration of the assignment did not satisfy the requirements for reconsideration under Rule 59(e) and 60.

The Declarations Order is consistent with the Reconsideration Order. The Bankruptcy Court therefore did not abuse its discretion when it explained that the Reconsideration Order had "already determined that the alteration did not affect the assumption and assignment of the Lease" because the alteration did not affect the court's conclusion that Hazard Coal was barred from challenging assumption and assignment by arguing the Lease was terminated pre-petition.

## CONCLUSION

The Bankruptcy Court's confirmation and interpretation of its prior Reconsiderations Order is not a clear abuse of discretion. Accordingly, the Court AFFIRMS the Bankruptcy Court's Declarations Order. The Court further ORDERS that Hazard Coal's motion for a hearing (R. 25) be DENIED as moot, and the Clerk shall STRIKE this case from the Court's active docket. This is a FINAL and APPEALABLE Order, and there is no just cause for delay.

Dated September 9, 2022

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY